**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) BOARD OF KAY COUNTY ) | |
| COMMISSIONERS OF THE COUNTY ) | |
| OF KAY, OKLAHOMA ) | |
| ) | CASE NO.   5:12-cv-00601-C |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| (1) FREEPORT-MCMORAN COPPER & ) | |
| GOLD, INC.; (2) FREEPORT-MCMORAN ) | |
| CORPORATION f/k/a PHELPS ) | |
| DODGE CORPORATION; ) | |
| (3) CYPRUS AMAX MINERALS ) | |
| COMPANY; and (4) BLACKWELL ) | |
| ZINC COMPANY, INC. ) | |
| ) | |
| Defendants. | |

## DEFENDANTS' ANSWER TO PLAINTIFF'S ORIGINAL PETITION

COME NOW Defendants Freeport-McMoRan Copper & Gold, Inc., Freeport-McMoRan Corporation (f/k/a Phelps Dodge Corporation), Cyprus Amax Minerals Company, and Blackwell Zinc Company, Inc. ("Defendants") and file this their Answer in response to Plaintiff's Original Petition.  In support of their Answer, the Defendants would show the Court the following:

All allegations in Plaintiff's Original Petition not specifically admitted below are denied.

1.      In response to paragraph 1, Defendants state that the provisions of 19 Okla. Stat. §§ 1(1), 3, and 4 speak for themselves.  To the extent that the statements in paragraph 1 are legal conclusions, they do not require any response.

2.      In response to paragraph 2, Defendants admit that FCX is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Phoenix, Arizona.  Defendants admit that FCX is authorized to do business in the State of Oklahoma and that FCX acquired FMC in March 2007, at which time FMC became a wholly-owned subsidiary of FCX.  Defendants admit that FMC and Cyprus Amax have conducted certain environmental investigation and remediation activities in Blackwell on behalf of BZC.  Defendants otherwise deny each of the remaining allegations in paragraph 3, and specifically deny that FCX has accepted responsibility for all cleanup, remediation, and damages associated with the historical operations of the Blackwell Zinc Smelter in Blackwell, Oklahoma (the "Blackwell Smelter" or the "Smelter") and deny that FCX was involved in the operation of the Smelter.

3.      In response to paragraph 3, Defendants admit that FMC is a corporation organized and existing under the laws of the State of New York with its principal place of business in Phoenix, Arizona.  Defendants admit that FMC acquired Defendant Cyprus Amax in 1999, at which time Cyprus Amax became a wholly-owned subsidiary of FMC. Defendants admit that FMC and Cyprus Amax have conducted certain environmental investigation and remediation activities in Blackwell on behalf of BZC.  Defendants otherwise deny each of the remaining allegations in paragraph 3, and specifically deny that FMC has accepted responsibility for all cleanup, remediation, and damages associated with the historical operations of the Smelter and deny that FMC was involved in the operation of the Smelter.

4.     In response to paragraph 4, Defendants admit that Cyprus Amax is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Phoenix, Arizona.  Defendants admit that Cyprus Amax was created by a merger between Cyprus Minerals Company and Amax, Inc., and that BZC formerly was a wholly owned subsidiary of Amax, Inc.  Defendants admit that FMC and Cyprus Amax have conducted certain environmental investigation and remediation activities in Blackwell on behalf of BZC.  Defendants deny each of the remaining allegations in paragraph 4, and specifically deny that Cyprus Amax has accepted responsibility for all cleanup, remediation, and damages associated with the historical operations of the Smelter and deny that Cyprus Amax was involved in the operation of the Smelter.

5.     In response to paragraph 5, Defendants admit that BZC is a corporation existing under the laws of the State of New York.  Defendants deny Plaintiff's allegation that BZC's principal place of business for purposes of this action has been judicially determined to be in  Blackwell, Oklahoma.  Based upon the United States Supreme Court's ruling in *The Hertz Corp. v. Friend,* __ U.S. __, 130 S.Ct. 1181, 1186, 1192 (2010), BZC's principal place of business is in Phoenix, Arizona.  Defendants admit that the Blackwell Zinc Smelter operated from approximately 1916 to 1974, and ceased commercial operations in 1974.  Blackwell Zinc Company was formed in 1922 and assumed ownership and operation of the Smelter at that time.  Defendants admit that BZC began the process of closing the Blackwell Smelter in or about 1972 and closed the facility by 1974.  Defendants admit that BZC filed an application for authorization to

operate a groundwater treatment plant in Blackwell, Oklahoma on or about March 6, 2006.  From December 2, 1999 until the present, Blackwell Zinc Company, Inc. has not engaged in any revenue-generating business activities.  BZC has continued to conduct activities related to the Blackwell Smelter, but such activities have been directed, controlled and coordinated by BZC from Phoenix, Arizona.  Defendants admit that BZC is a wholly-owned subsidiary of Cyprus Amax, which is a wholly-owned subsidiary of FMC, and admit that FMC is a wholly-owned subsidiary of FCX.  Defendants deny each of the remaining allegations in paragraph 5.

6.     In response to paragraph 6, Plaintiff's statement that, as a court of general jurisdiction, this Court has general jurisdiction over the claims asserted pursuant to Okla. Const. Art. VII, § 7, is a legal conclusion and accordingly does not require a response. Defendants state that the second and third sentences of this paragraph fail to make any factual allegations and merely describe Plaintiff's intention to assert the claims and counts in this suit under the laws and statutes of the State of Oklahoma and Plaintiff's intention not to address any claims for alleged violations (or potential violations) under any federal statute or Constitutional provision; therefore, these statements do not require a response.

7.     Plaintiff's statement in paragraph 7 that the Kay County district court has specific jurisdiction over this matter pursuant to 50 Okla. Stat. § 17 is a legal conclusion and therefore does not require a response.

8.     In response to paragraph 8, Defendants admit that they are subject to personal jurisdiction in this Court.  The remainder of the statements in paragraph 8 are legal conclusions and do not require a response.

9.     Plaintiff's statement in paragraph 9 that venue is proper in Kay County is a legal conclusion and accordingly does not require a response.

10.     Defendants admit sentence 1 of paragraph 10.  Defendants admit that the City of Blackwell is located in Kay County.  Defendants state that they have insufficient information to admit or deny the remaining allegations in paragraph 10.

11.     The provisions of 69 Okla. Stat. §§ 601 and 1201 speak for themselves. Defendants state that they have insufficient information to admit or deny the remaining allegations in paragraph 11.

12.     Defendants state that they have insufficient information to admit or deny the allegations in paragraph 12.

13.     Defendants admit that Kay County is divided into three commission districts and that Blackwell is located in Kay County District No. 3.  Defendants state that they have insufficient information to admit or deny the remaining allegations in paragraph 13.

14.     Defendants deny each and every allegation in paragraph 14, except that Defendants admit that (i) the Blackwell Smelter operated from approximately 1916 to 1974; (ii) the Blackwell Smelter facility was located on approximately 160 acres of land located near the intersection of 13th Street and State Highway 11 in Blackwell, Oklahoma; (iii) the Blackwell Smelter previously was used to refine zinc and cadmium

from ore concentrates that came from various sources and locations; (iv) the ore concentrates often contained some level of zinc, arsenic, lead, cadmium and/or other metals; (v) the Blackwell Smelter produced millions of tons of zinc alloy during its operational life; and (vi) a cadmium plant was opened at the Blackwell Smelter in or about 1957.

15.    Defendants deny each and every allegation in paragraph 15, except that Defendants admit that (i) historically there were instances where certain byproducts produced by the Smelter ("Smelter Materials")  were stored at various locations on the Blackwell Smelter site; (ii) the soil in certain areas in Blackwell contained levels of zinc, arsenic, lead and/or cadmium above naturally occurring background levels, but deny that such concentrations above background levels have caused Plaintiff any damage or legally recognized injury, and (iii) air emissions from historical smelter operations resulted in the deposit of particulates in the vicinity of the smelter but these emissions did not impact County roads and bridges outside the City of Blackwell.

16.    Defendants deny each and every allegation in paragraph 16, except that Defendants admit that (i) Smelter Materials were taken by others, including the County, from the Blackwell Smelter; (ii) Smelter Materials were stored during various time frames, in various locations of the Blackwell Smelter facility, including in the northern portion of the property; and (iii) trucks and trailers belonging to the County were used to haul away Smelter Materials.

17.    Defendants deny each and every allegation in paragraph 17, except that Defendants admit that (i) Blackwell Smelter Materials were used by others in the

construction of roads and related applications, but deny that the use of the Smelter Materials has caused Plaintiff any damage or other legally recognized injury; and (ii) from time to time, BZC received assistance from engineers and/or metallurgists in connection with operations of the Blackwell Smelter.

18.     Defendants deny each and every allegation in paragraph 18, except that Defendants admit that (i) Smelter Materials were taken from the Blackwell Smelter by Kay County; (ii) Kay County received the Smelter Materials; (iii) Smelter Materials were used by Kay County in the construction of roads, culverts, and bridges, but deny that the use of the Smelter Materials has caused Plaintiff any damage or other legally recognized injury; and (iv) County trucks were used to haul Smelter Materials from the Blackwell Smelter.

19.     Defendants deny each and every allegation in paragraph 19, except that Defendants admit that BZC began the process of closing the Blackwell Smelter in or about 1972 and closed the facility by 1974.

20.     In response to paragraph 20, Defendants admit that (i) BZC conveyed the Blackwell Smelter site to the Blackwell Industrial Authority ("BIA") after the closure of the Smelter in 1974, and BIA thereafter developed the site as an industrial park; (ii) BIA is a statutory public trust organized and existing under the laws of the State of Oklahoma, 60 Okla. Stat. § 176 *et seq.,* whose sole beneficiary is the City of Blackwell, and (iii) on information and belief, the County owns real property on the smelter site that includes an office and equipment barn.  Defendants state that they have insufficient information to admit or deny the allegations regarding how much of the former Blackwell Smelter site is

currently owned by BIA and other third parties.   Defendants deny the remaining allegations in paragraph 20.

21.     Defendants deny each and every allegation in paragraph 21, except that Defendants admit that (i) investigations regarding the environmental condition of the Blackwell Smelter site occurred in approximately the early 1990s; (ii) in or about 1992, EPA conducted a site inspection that included soil sampling at the Blackwell Smelter site and in certain areas of the City of Blackwell; (iii) in or about 1992, EPA suggested the possibility that the Blackwell Smelter site could in the future become a Superfund site and be placed on the National Priorities List; and, (iv) BZC, BIA and the City of Blackwell entered into a Consent Agreement and Final Order (the "CAFO") with the Oklahoma Department of Health, the terms of which speak for themselves, and (v) that the CAFO does not include or address County roads and bridges located outside the city limits of Blackwell, Oklahoma.

22.     Defendants deny each and every allegation in paragraph 22, except that (i) Defendants admit that in 1994, EPA and ODEQ entered into a Memorandum of Understanding (the "MOU"), a purpose of which was to facilitate a CERCLA-quality investigation and remediation of the Blackwell Smelter site, and (ii) Defendants admit that on April 27, 2009, the United States District Court for the Western District of Oklahoma, *Coffey, et al., v. Freeport-McMoRan Copper & Gold, Inc., et al.,* Case No. 5:08-cv-00640-HE issued an Order, the language of which speaks for itself.

23.     Defendants deny each and every allegation in paragraph 23, except that Defendants admit that (i) following the CAFO and MOU, Cyprus Amax conducted a

CERCLA-quality environmental investigation and remediation in the City of Blackwell on behalf of BZC under the oversight of ODEQ and EPA; (ii) the soil in certain areas of the Blackwell Smelter site and the City of Blackwell contained levels of zinc, arsenic, lead and/or cadmium above naturally occurring background levels, but deny that such concentrations of metals above background levels have caused Plaintiff any damage or legally recognized injury; and (iii) levels of zinc and cadmium above naturally occurring background levels have been detected in surface water and shallow groundwater in certain areas of the City of Blackwell, but deny that such concentrations of metals above background levels have caused Plaintiff any damage or legally recognized injury. Defendants deny that "little, if any, attention was given to County property"; BZC has repeatedly offered to perform a government agency-directed assessment of county roads and bridges and to abide by with the outcome.  In contrast, the County has refused to participate.

24.    Defendants deny each and every allegation in paragraph 24, except that Defendants admit that (i) the soil in certain areas of the Blackwell Smelter site and the City of Blackwell contained levels of zinc, arsenic, lead and/or cadmium above naturally occurring background levels, but deny that such concentrations of metals above background levels have caused Plaintiff any damage or legally recognized injury; (ii) air emissions from historical smelter operations resulted in the deposit of particulates on and in the immediate vicinity of the smelter site, but deny that such deposition has caused Plaintiff any damage or legally recognized injury; and (iii) historically there are instances where Blackwell Smelter Materials were used as fill and for other purposes, but deny that

such use of the Blackwell Smelter Materials has caused Plaintiff any damage or other legally recognized injury.

25.    In response to paragraph 25, Defendants admit that in April 1996, ODEQ issued a Record of Decision Document, Soil Remediation Unit (the "Soil ROD"), the terms of which speak for themselves, and Defendants deny each and every one of Plaintiff's characterizations of the Soil ROD that go beyond the language of the Soil ROD itself.

26.    Defendants deny each and every allegation in paragraph 26, except that Defendants admit that in April 1996, ODEQ issued the Soil ROD, the terms of which speak for themselves.   Defendants admit that the Soil ROD, including the quoted language, does not require remedial action or investigation outside of the "site" as that term is used in the Soil ROD, and the Soil ROD site does not include County roads and bridges outside the city limits of Blackwell.  Defendants deny that ODEQ has concluded that all visible Smelter Materials pose a significant hazard to human health or the environment.   Defendants admit that Kay County has failed to maintain an adequate cover of aggregate on its roadways in some locations.  Defendants admit that they are aware of a limited number of locations where Smelter Materials are visible at the surface either on or adjacent to Kay County roads and bridges, but deny that this condition has caused Plaintiff any damage or legally recognized injury.   In July 2001, the Final Remediation Action Completion Report for the Soil ROD was approved by EPA and ODEQ, documenting that the requirements of the Soil ROD were fully satisfied.  ODEQ issued its First Five-Year Review Report in April 22, 2003 stating that Phelps Dodge had

implemented the remedial actions selected in the 1996 ROD.  In the Second Five-Year Review Report (May 7, 2008), ODEQ confirmed that the remedy was still functioning as intended in the ROD. During this process, there were numerous opportunities for public comment.  Until recently, the County did not express any concerns or complaints concerning the scope of the Soil ROD cleanup — including the fact that County roads and bridges were not part of the Soil ROD — despite the County's knowledge regarding the condition of its roads and bridges and the possible presence of Smelter Materials. Since that time, BZC has repeatedly offered to perform a government agency-directed assessment of county roads and bridges and to abide by the outcome.  BZC has met with and exchanged correspondence with both the U.S. Environmental Protection Agency ("EPA") and ODEQ in connection with developing a scope of work for this assessment.

27.    Defendants deny each and every allegation in paragraph 27, except that Defendants admit that they are aware of a limited number of locations where Smelter Materials are visible at the surface either on or adjacent to Kay County roads and bridges, but deny that this condition has caused Plaintiff any damage or legally recognized injury. Defendants deny that the presence of these Smelter Materials on Kay County roads and bridges has caused any environmentally-significant soil contamination.  Defendants cannot rule out the possibility that County employees may occasionally drive over the limited number of locations where Smelter Materials are visible.  Defendants deny that County road workers are constantly exposed to or continuously encounter Smelter Materials in the course of their routine duties and deny that such workers require special training or equipment.  Defendants assert that neither the County nor any other person or

entity has provided any data to support the claim that the County or its employees has incurred any injury, harm or damage; assert that the mere presence of metals in smelter material is not indicative that the material is adversely impacting human health or the environment; and assert that Smelter Material is inert material that does not readily break down.

28.     Defendants deny each and every allegation in paragraph 28, except that Defendants admit that (i) Grant County, Oklahoma, is located immediately to the west of Kay County; (ii) during or before 2000, ODEQ collected soil samples from ditches in Grant County; (iii) ODEQ analyzed the soil samples collected from Grant County ditches for cadmium, arsenic, lead and zinc; (iv) ODEQ provided the sample results to Defendants; (v) most of the sample results did not exceed the residential cleanup levels established in the Soil ROD; and (vi) ODEQ accepted Grant County's proposal to place the excavated soil from the ditches on Grant County roads away from residential properties.

29.     Defendants deny each and every allegation in paragraph 29.

30.     Defendants admit that the Blackwell Smelter was closed nearly 40 years ago.  Defendants admit that they are aware of a limited number of locations where Smelter Materials are visible at the surface either on or adjacent to Kay County roads and bridges, but deny that this condition has caused the County or its employees any damage or legally recognized injury.  Defendants have insufficient information to admit or deny the allegations regarding the number and geographic extent of the locations where visible Smelter Materials are present.  Defendants admit that Kay County has failed to maintain

an adequate cover of aggregate on its roadways in some locations.  Defendants deny each and every remaining allegation in paragraph 30.

31.   Defendants deny each and every allegation in paragraph 31, except that Defendants admit that Smelter Materials may contain one or more of cadmium, arsenic, lead and zinc in concentrations that exceed background concentrations of these metals in soil, but state that the mere presence of metals in smelter material is not indicative that the material is adversely impacting human health or the environment or causing any damage or injury to Plaintiff.  Smelter Material is inert material that does not readily break down.  Defendants further assert that sampling of residential properties in Blackwell confirmed that visible Smelter Material was not contributing metals to soils in concentrations that exceeded soil cleanup levels.  Accordingly, under the Soil ROD, BZC left visible Smelter Material in place, and ODEQ concurred with this approach.  More recently, to address perceptions by certain residents regarding Smelter Material that was left after property cleanup, BZC began voluntarily removing the Smelter Material as part of its supplemental soil program.  More importantly, there have been no studies showing that the types of Smelter Materials identified on Kay County roads contribute metals to the environment over time.  Finally, the County roads and bridges are not part of the Blackwell Soil ROD, and the physical settings and environmental assessment criteria are different.  Specifically, the nature of the risks and exposure scenarios involved with Smelter Material on residential properties are very different than with smelter material on rural roads and bridges.  Defendants deny that the Plaintiff's allegations in paragraph 31 are a complete and accurate summary of Defendants' agreements with ODEQ regarding

the environmental investigations and cleanup in Blackwell and Collinsville, and affirmatively state that agreements speak for themselves.  Despite having heard from the County for the first time over 10 years after the final completion report for the Soil ROD, the Defendants have not "walked away," but rather have repeatedly offered to perform a government agency-directed assessment of county roads and bridges and to abide by the outcome.

32.     Defendants have insufficient information to admit or deny the allegations in paragraph 32, sentences 4 and 5 regarding population growth in Kay County, and Defendants deny each and every remaining allegation in paragraph 32.

33.     Defendants deny each and every allegation in paragraph 33.

34.     In response to paragraph 34, Defendants state that the provisions of 82 Okla. Stat. § 1084.1, 27A Okla. Stat. § 2-6-105, and 50 Okla. § 7 speak for themselves. Defendants deny each remaining allegation in paragraph 34.   To the extent that the statements in paragraph 34 are legal conclusions, they do not require any response.

35.     Defendants deny each and every allegation contained in paragraph 35 and specifically deny that Plaintiff is entitled to any relief from Defendants.

36.      Defendants deny each and every allegation contained in paragraph 36 and specifically deny that Plaintiff is entitled to any relief from Defendants.

37.     In response to paragraph 37, Defendants repeat their answer to paragraphs 1-36.

38.     Defendants deny each and every allegation contained in paragraph 38.  To the extent that the statements in paragraph 38 are legal conclusions, they do not require any response.

39.     The statements in paragraph 39, sentence 2, are legal conclusions and therefore do not require a response.  Defendants deny that Defendants' actions, in fact, constitute a public nuisance.  Defendants otherwise deny the allegations contained in paragraph 39.

40.     Plaintiff's statement in paragraph 40 that the County has authority to pursue this action for abatement of an alleged public nuisance and/or assessment of all costs therewith against Defendants jointly and severally is a legal conclusion and therefore does not require a response.  Defendants specifically deny that Plaintiff is entitled to any relief from Defendants.

41.     In response to paragraph 41, Defendants repeat their answer to paragraphs 1-40.

42.     Defendants deny each and every allegation contained in paragraph 42.

43.     Defendants deny each and every allegation contained in paragraph 43.

44.     Defendants deny each and every allegation contained in paragraph 44, and Defendants specifically deny that Plaintiff is entitled to any relief from Defendants.

45.     In response to paragraph 45, Defendants repeat their answer to paragraphs 1-44.

46.     Defendants deny each and every allegation contained in paragraph 46

47.     Defendants deny each and every allegation contained in paragraph 47.

48.     Defendants deny each and every allegation contained in paragraph 48.

49.     Defendants deny each and every allegation contained in paragraph 49, and specifically deny that Plaintiff is entitled to any relief from Defendants.

50.     In response to paragraph 50, Defendants repeat their answer to paragraphs 1-49.

51.     The allegations contained in paragraph 51 are legal conclusions and accordingly do not require a response.  If a response is required, Defendants deny each and every allegation in paragraph 51.

52.     Defendants deny each and every allegation contained in paragraph 52.

53.     Defendants deny each and every allegation contained in paragraph 53.

54.     Defendants deny each and every allegation contained in paragraph 54.

55.     Defendants deny each and every allegation contained in paragraph 55 and specifically deny that Plaintiff is entitled to any relief from Defendants.

56.     In response to paragraph 56, Defendants repeat their answer to paragraphs 1-55.

57.     Defendants deny each and every allegation contained in paragraph 57.

58.     Defendants deny each and every allegation contained in paragraph 58.

59.     Defendants deny each and every allegation contained in paragraph 59.

60.     Defendants deny each and every allegation contained in paragraph 60.

61.     Defendants deny each and every allegation contained in paragraph 61 and specifically deny that Plaintiff is entitled to any relief from Defendants.

62.     Defendants deny each and every allegation contained in paragraph 62.

63.     Defendants deny each and every allegation contained in paragraph 63 and specifically deny that Plaintiff is entitled to any relief from Defendants.

64.     No response is required to Plaintiff's jury demand in paragraph 64.

65.     Defendants deny all of the allegations contained in Plaintiff's "Prayer for Relief" and deny that Plaintiff is entitled to any of the relief requested in its Petition.

### JURY DEMAND

66.     Defendants demand a trial by jury on all issues so triable.

### DEFENDANTS' ADDITIONAL STATEMENTS AND DEFENSES

Defendants, having fully answered Plaintiff's Original Petition, further answer, allege, and state as follows:

67.     Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations, including, without limitation, OKLA. STAT. tit. 12, § 95(A)(3) (the two-year statute of limitations that is generally applicable to tort actions in Oklahoma). Plaintiff cannot avoid the limitations bar because, among other things, it has not suffered any legally compensable injury within the applicable periods of limitations preceding the filing of this action; it possessed such information that should have caused it to reasonably inquire or further investigate the alleged use and condition of the Smelter Materials; and Plaintiff had knowledge of both the alleged existence and cause of injury (or sufficient knowledge that should have caused them to reasonably inquire or investigate further).

If the allegations contained in Plaintiff's Original Petition are taken as true (which Defendants deny), then Plaintiff should have reasonably inquired or further investigated

the use and condition of the Smelter Materials that Plaintiff contends caused its claimed injuries.  For example:

- Plaintiff acknowledges that it used "trucks and trailers belonging to the County" to pick up and transport the Smelter Materials for use on County roads. Plaintiff's Original Petition at ¶ 16, p. 6.

- Plaintiff states that it took Smelter Materials "from near the time Smelter operations began in late 1916 until the Smelter finally closed  in the mid-1970s." *Id*. at ¶ 18, p. 7.

- Plaintiff allege that "[e]xtensive environmental investigations . . . began in the early 1990s," and "[i]n 1992, the United States Environmental Protection Agency ("EPA") suggested the Smelter property and surrounding areas . . . could become a Superfund site and be placed on the National Priorities List ("NPL")." *Id*. at ¶ 21, p. 9.

- As noted above, at the time of these environmental investigations, the County was aware of the presence of "visible Smelter residues . . .  on properties owned, operated, and/or maintained by the County."  *Id*. at ¶ 27, p. 11.  The County acknowledges that the "Smelter residues are visible and remain exposed even today." *Id*. at ¶ 30, p. 13.

Defendants' responses to these allegations by Plaintiff are contained in Defendants' responses to these paragraphs, *supra*.  In July 2001, the Final Remediation Action Completion Report for the Soil ROD was approved by EPA and ODEQ, documenting that the requirements of the Soil ROD were fully satisfied.  ODEQ issued its First Five-Year Review Report in April 22, 2003 stating that Phelps Dodge had implemented the remedial actions selected in the 1996 ROD.  In the Second Five-Year Review Report (May 7, 2008), ODEQ confirmed that the remedy was still functioning as intended in the ROD. During this process, there were numerous opportunities for public comment.  Until recently, the County did not express any concerns or complaints concerning the scope of the Soil ROD cleanup — including the fact that County roads

and bridges were not part of the Soil ROD — despite the County's knowledge regarding the condition of its roads and bridges and the possible presence of smelter materials. Under Plaintiff's own theory, as set forth in the allegations made in Plaintiff's Original Petition, the County was on notice to reasonably inquire or further investigate the use and condition of the Smelter Materials that it now contends caused its claimed injuries more than two years before this suit was filed.

68.     Plaintiff's claims are barred by the doctrines of unclean hands, laches and estoppel.  The Plaintiff's allegations discussed above in paragraph 67, *supra*, that should have caused Plaintiff to reasonably inquire or further investigate the alleged contamination for statute of limitations purposes also demonstrate that Plaintiff's claims should be barred under the equitable defenses of unclean hands, laches and estoppel.

69.     Plaintiff's alleged damages, if any, may have been caused or contributed to by the conduct and/or negligence of the County, including without limitation (i) the County's failure to properly construct its roads and bridges; and (ii) the County's failure to properly maintain the roads and bridges in such a manner as to allow Smelter Materials to function as fill or road base.  Plaintiff's claims are barred, in whole or in part, by the County's own proportionate responsibility, contributory or comparative negligence, fault, or failure to exercise ordinary care, and Plaintiff's recovery, if any, must be reduced in proportion to the percentage of responsibility of Plaintiff.  The County voluntarily picked up the Smelter Materials at the BZC Smelter site and transported the Smelter Materials for its own use on its roads and bridges.  *See* Plaintiff's Original Petition, at ¶ 16, p. 6. The County alone decided that the Smelter Materials were suitable construction materials

for use on its roads and bridges.  The County acknowledges that "notwithstanding [its] efforts taken and expenses incurred by the County to the keep any Smelter residues adequately covered, Smelter residues are visible and remain exposed . . . throughout the County's roads, bar ditches, culverts, bridges and other structures."  *Id.* at ¶ 30, p. 13. The Smelter Materials are exposed because the County has failed to properly construct and maintain its roads and bridges.

70.     Plaintiff's claims are barred, in whole or in part, because of their failure to mitigate their alleged damages.  Defendants assert that, as set forth in paragraph 69, *supra*, Plaintiff is in part responsible for its alleged damages because of its failure to properly construct and maintain its roads and bridges, and that such failure also constitutes a failure to mitigate

71.     Plaintiff's claims are barred, in whole or in part, because at all relevant times Defendants acted and have acted in a manner consistent with then existing and reasonably available technological, scientific, and industrial state-of-the-art, as well as all applicable governmental regulations, oversight, agreements and orders.

72.     Defendants are not jointly and severally liable for Plaintiff's alleged damages.  While Defendants deny that Plaintiff has suffered any injuries or damages, to the extent Plaintiff establishes injury, it is divisible and Defendants' liability, if any, is several.

73.     Plaintiff's Original Petition fails to state facts sufficient to entitle Plaintiff to any award of punitive damages against any Defendant.  Moreover, because of the lack

of clear standards, the imposition of punitive damages against any Defendant is unconstitutionally vague and/or overbroad.

74.    Plaintiff's claims for punitive damages are barred or limited by OKLA. STAT. tit. 23, § 9.1.

75.    Plaintiff's claims for punitive damages cannot be maintained as a matter of law because, among other items, an award of punitive damages would contravene Defendants' rights under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution, as well as the Equal Protection Clause, the Excessive Fines Clause of the Eighth Amendment of the United States Constitution, the Double Jeopardy Clause in the Fifth Amendment to the Constitution of the United States, and the correlative provisions of the Oklahoma Constitution, including any:

a.    imposition of punitive damages by a jury which:

(1)    is not provided with standards of sufficient clarity for determining the appropriateness, and the appropriate size, of a punitive damages award

(2)    is not adequately and clearly instructed on the limits on punitive damages imposed by the principles of deterrence and punishment

(3)    is not expressly prohibited from awarding punitive damages, or determining the amount of an award thereof, in whole or in part, on the basis of invidiously discriminatory characteristics, including the corporate status, wealth, or state of residence of Defendant

(4)    is permitted to award punitive damages under a standard for determining liability for such damages which is vague and arbitrary and does not define with

sufficient clarity the conduct or mental state which makes punitive damages permissible; and

(5)     is not subject to trial court and appellate judicial review for reasonableness and the furtherance of legitimate purposes on the basis of objective standards

b.     imposition of such punitive damages, and determination of the amount of an award thereof, where applicable law is impermissibly vague, imprecise, or inconsistent; and

c.     imposition of such punitive damages, and determination of the amount of an award thereof, in a way that subjects Defendant to impermissible multiple punishments for the same alleged wrong.

76.     To the extent that Plaintiff's claims for punitive damages seek recovery for punitive damages as punishment for conduct that occurred outside of the State of Oklahoma's borders, such an imposition of punitive damages would violate Defendants' rights under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution, as well as the correlative provisions of the Oklahoma Constitution.  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572−73 (1996).

77.     Plaintiff's claims are subject to the requirement of election of remedies.

78.     Should any Defendant be held liable to Plaintiff, which liability is specifically denied, such Defendant would be entitled to a set off and credit for the total of all amounts recovered by, paid to, or otherwise received by Plaintiff (including the

benefits of any specific performance) from any Defendant, any settling Defendant, and any other permissible collateral sources.

79.     Plaintiff's claims for unjust enrichment and any other forms of equitable relief are barred because, to the extent Plaintiff establishes it is entitled to recovery based on any other theory of liability asserted in its Original Petition, which Defendants expressly deny, Plaintiff has an adequate remedy at law and is barred from receiving equitable relief.  Moreover, Plaintiff has received a net benefit from use of the Smelter Materials for construction of its roads and bridges in lieu of purchasing raw materials for this purpose.

Respectfully submitted,

*s/ Reid E. Robison*
Reid E. Robison, OBA # 7692
MCAFEE & TAFT A PROFESSIONAL
CORPORATION
Two Leadership Square
211 North Robinson Avenue, Suite 1000
Oklahoma City, Oklahoma 73102-7103
reid.robison@mcafeetaft.com
(405) 235-9621
(405) 235-0439 Facsimile

Steve Lewis, OBA # 5413
Lewis Law Firm LLC
LEWIS LAW FIRM LLC
810 S. Cincinnati, Suite 110
Tulsa, Oklahoma  74119
steve@lewisoklaw.com
(918) 582.2455


**ATTORNEYS FOR DEFENDANTS
FREEPORT-MCMORAN COPPER & GOLD
INC.; FREEPORT-MCMORAN CORPORATION
(F/K/A PHELPS DODGE CORPORATION);
CYPRUS AMAX MINERALS COMPANY; AND
BLACKWELL ZINC COMPANY, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2012, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Patrick M. Ryan
Donald K. Shandy
Phillip G. Whaley
Stephen C. Gelnar
Patrick R. Pearce, Jr.
RYAN WHALEY COLDIRON SHANDY PLLC
900 Robinson Renaissance
119 North Robinson
Oklahoma City, Oklahoma 73102
dshandy@ryanwhaley.com
*Attorneys for Plaintiff*

James L. Menzer
MENZER LAW OFFICES, P.C.
P.O. Box 818
211 West Blackwell Avenue
Blackwell, Oklahoma 74631-0818
James.Menzer@MenzerLaw.com
*Attorney for Plaintiff*


*s/ Reid E. Robison*
Reid E. Robison